Next 9 o'clock case in re the Marriage of Reichard And we've got Mr Clemens for the appellate Please proceed Good morning, your honors May it please the court, counsel, Ms. Feynman Let her get seated here I'm John Clemens, your honors I'm the attorney for the appellant And I was also the trial counsel for Ulrich Reichard Now this case was tried before the Honorable Judge Kimberly Dahlin in Jackson County And the case is highly fact-based So I'm going to concentrate on that mainly And certainly answer any of the court's questions on these facts or case law The case was filed in November of 2011 The parties had actually separated in January of 2010 And then it went to the second stage hearing in November of 2014 So there was almost a five year period where the parties were not living together before it went to trial The plaintiff, my client, the appellant, Ulrich Reichard Is an anthropology professor at Southern Illinois University, Carbondale The defendant, Frienze Reichard, was a homemaker during most of the marriage Although she had two art degrees obtained in Germany The parties married in 2000 in Germany Lived together approximately ten years Both are German citizens, but they have legal permanent status as residents of the United States They came to the United States so Professor Reichard could accept an anthropology position at Southern Illinois University, Carbondale They had two sons born to the marriage The wife's degrees are essentially both in art and They don't do their degrees the same way as we do in the United States But all agree they are equivalent to a bachelor's and a master's degree The husband put her through school He was employed in Germany at the time they were married And she wanted to attend school There are some pre-trial matters, but if I have time I'll get to that Second stage hearing in this case was held in November of 2014 Which is somewhat important because there were some changes in the maintenance statute But they did not go into effect until January 1 of 2015 There was an extensive stipulation in the pre-trial stage presented to the court And what the parties attempted to do was narrow the issues And what we went to trial on was essentially maintenance, child support, the amount There was no question that the parties agreed it would be a 28% child support based on the guidelines But they had some disputes as to the amount And then there were some medical insurance issues And my client wanted his sons to have some music education But he wanted some cost sharing on that The child support and the medical insurance and music are not pertinent to the appeal The appeal is essentially on the maintenance question When the wife testified, she fully agreed Her husband put her through school in Leipzig, Germany That she obtained two degrees, everything paid for by her husband At the time of the second stage, she was living in a two bedroom, one bath duplex The husband was living in the former marital house Which was an older house near campus in Carbondale They had joint custody, they agreed on that very early on And the two sons spent roughly 50% of the time with mom, 50% of the time with dad Dad was paying $1,107 a month child support based on a pre-trial temporary support order They also each received $230 a month for the children through a German government program Because they maintained their German citizenship The wife had two part time jobs And she was teaching in a private school in Carbondale And then she did extensive babysitting for a family with four children After school and basically full time in the summer when school was out Can I interrupt you to ask you a question? You mentioned the pre-trial conference regarding the temporary child support And how this relates to the last issue you raised about the substitution of judge I wasn't clear from the briefs Judge Daylin, she participated in this pre-trial conference, did she not? Didn't they go back and talk to her? The way it took place, and this is kind of her modus operandi She asks the attorneys to come into chambers We sit down and she says, okay, what's this all about? We explain we're here on temporary child support And without getting into any extensive detail She says, you two need to go get this resolved And sends Mr. Reed out Mr. Reed was the trial attorney from Ms. Raymond's firm Sends us out into the hall, one of the conference rooms, jury rooms that we use And says, get it worked out We get it worked out We come up with $1,107 We go back into the courtroom and wait our turn Judge Daylin comes in and says, I understand you've resolved this And we say, yes we have And she says, good But didn't she sign the order? Well, she said somebody drafted an order and submitted it And that was it Later on, then, in the proceeding And that's the third and final issue We requested a substitution of judge On the basis that there had been no substantial rulings So, if she would have participated more In that pretrial conference And helped you reach the resolution on the temporary order Would your position still be the same That she had not had a substantial ruling in the case? And within getting facts specific Because I didn't get in the record what she just said As far as how it came about And I don't think it's in the record As to the extent of the involvement of the trial judge In that participation So, there's a real problem when things are done this way, Judge Because there's no record about what went on in chambers  But, you know, as an officer of the court Essentially, that's what happened I mean, possibly she said, tell me about the plaintiff Tell me about the defendant Who's working, who's got jobs, what's the situation And I think we made it clear that this was a guideline case Nobody was arguing that we weren't going to use A 28% child support guidelines But our position on that issue is that Substitution should have been granted as a matter of right Because the court did not make any Major decision, any substantial decision Pursuant to the substitution statute If the two of you had gone into a conference room Worked out something, presented it to Judge Dahlin And the judge said I don't agree with this, this doesn't sound right Go back and do it some more Or we're going to try it this afternoon She had the discretion to do that, is that correct? Yes, Your Honor, clearly Then why isn't her acquiescence to the agreement And the subsequent order that was presented to her A substantive ruling in the case? She never had to make a decision Didn't she make a decision to Whether to agree or not agree To what the two of you agreed to? She ratified it Isn't that a substantive decision? I don't believe so, Judge I think a substantive decision is where the court Has to pick this way or this way You know, this side wants $1,000 a month child support This side wants $800 The court has to make a decision Instead of the parties come in and say We've got it agreed, Judge And the judge says fine That's fine with the court Which is the court's ratifying Somebody go draft an order Any questions on, I mean, given the time factor On the maintenance situation? Well, she jumped ahead and applied This new maintenance formula in this case When she didn't have to, is that That's why we've got significant problems, Your Honor  And deviated from that And lowered the amount of maintenance For the benefit of your client Than what the formula would have revealed That helped, but We went to trial, Judge With the existing law Not some law that wasn't going to take effect For several months And at trial The wife is arguing for I need to finish another degree She wanted to get a third degree In early childhood education And I've only got 40 more semester hours This is all at John A. Logan Community College in Carterville And she's saying Give me three to three and a half years Of rehabilitative maintenance So I can get through school And 40 semester hours at Logan It was $99 an hour at the time Which was the evidence Is like $4,000 in tuition And my client's position Throughout this case has been She doesn't need any maintenance Given the division of property And in particular this Amount of CSRS money $63,700 Plus $10,000 on the house My client was turning over to her $73,700 When everything was divided up And the CSRS money Was usable right away Immediate access She didn't have to wait It's based on the type of CSRS plan That SIU has It's called a self-managed plan He could not access that money He has to wait until he actually retires From the university But she could access it immediately We got a tax opinion That clearly indicated from Professor Carnes at SIU Accounting Department That she could access it Right away for school And not even pay the 10% penalty For early withdrawal Of retirement type accounts So our position was always That she had lots of money She had no credit card debt She had no student loan debt She already finished 20 hours She was in very good economic shape And Judge Dolan gives her maintenance And then gives her maintenance For 8.4 years Which is roughly 100 months $90,000 So we were very surprised And Judge Dolan rightly says The new statute doesn't apply Based on when this case was filed When it was tried But then uses the statute Which no one addressed At second stage No one addressed During the briefing of the case She asked for final written Closing arguments In the final written Closing arguments  Said give us 48 months Of rehabilitative maintenance His client had testified That three and a half years Would do it We argued of course She doesn't need maintenance Given the financial situation Given the property divisions Given her very good financial situation My client went into The second stage hearing Running a deficit Of I think it was over $300 A month He was still paying On this house He had $79,000 In debt on the house His parents and his sister In Germany had assisted the couple When they moved to the United States To start the career at SIU In buying the house He had to pay that off And there was full documentation Of this in the case So our position has always been And we think it is supported By the evidence It's supported by the law That there should have been No maintenance And then The duration of the maintenance That was ordered in this case Is totally contrary To the evidence To the weight of the evidence And we believe Is an abuse of discretion And is clearly against The manifest weight Of the evidence in this case The math is wrong too You think she did not Properly apply the formula to the You think I don't think the trial judge Really did the math even correctly When you take my client's income He was a professor at SIU His yearly income Was a little over $75,000 Had to pay lots of things off Thank you counsel We have some time on rebuttals Argument for the appellee May it please the court Counsel My name is Peggy Raymond And I represent the defendant Appellee Franz Reichert Your honor It's our position that the trial court Was correct in ordering And awarding maintenance To our client in this case The trial court went through Each statutory factor Under the maintenance statute And in her court order Specifically put case specific facts For each factor as to why She determined that Maintenance was appropriate Husband was a professor at SIU In 2014 he was on track To earn between $75,000 $80,000 a year Our client was employed part time As a teacher's aide At a private school And doing babysitting During the marriage She primarily been a homemaker She started work after She was separated from her husband She did have the two degrees From Germany in art But they were mainly for studio art For her painting, drawings She wasn't able to teach With those degrees She had done some showings Here in southern Illinois But she only sold one painting So there was no evidence That she had turned down Any job opportunities In relationship to those degrees That she obtained in Germany Her income through her Part time employment Was less than $1,000 a month That was from her employment alone So given the wide disparity In income in this matter We believe that the trial court Was correct in awarding The maintenance Mr. Clemons argued That she received the $10,000 From the equity in the home And she received the money From the husband's Served self-managed account That's correct, she did He still had equity In the home as well The mortgage on the home Through the bank Was going to be paid off In May of 2015 The money that he borrowed From his family Was not actually tied To the house In terms of being able to sell it It wasn't listed as a mortgage Or recorded as a mortgage Yes, he would still have To pay that back But there was no time frame On when that would have to be paid And if memory serves me correctly I believe that Mr. Reichert Testified at trial That those payment dates Had even been extended By his family The law is quite clear That she's not required To deplete the assets That she receives at trial From the marriage In order to sustain Her monthly living expenses And to support herself And that's basically What her husband is arguing In this matter She was attending John A. Logan College To attain a degree In early childhood education Because she knew That she was going to have To be able to support herself At some point in time But she's got to get To that point, your honors She testified She needed roughly 30 hours Excuse me, 40 hours more That she was hoping She'd be able to go down And just be able to work One part-time job While she attended school And finished her degree At this time She's juggling her part-time job At the school Part-time job babysitting And helping raise two boys 50% of the time So she's juggling all these things And trying to make them all work Also Mr. Riker seems to argue That as soon as she gets her degree Maintenance student She still has to be able to Become self-sufficient Once she obtains her degree She needs to be able to find a job Get self-sufficient And be able to take care of herself The standard that the court Is to look at is What is the standard of living and joy During the marriage Not what it takes to meet Your minimum needs We also believe That the trial court was correct In the amount and duration Of the maintenance that was Ordered in this matter The judge had discretion In setting the amount and duration Of the maintenance Mr. Clems is correct That that new maintenance statute Did not take effect until January 1st 2015 When Judge Dahlin was determining This matter, it was January 2015 The legislature saw fit To create this new Statute to try and get Some consistency in the maintenance Awards in the state of Illinois So Judge Dahlin decides I'm going to look at this new statute See what it says What numbers would it give me She did the math She came up with I believe Mr. Riker would have had to Pay roughly $1,700 a month In maintenance under the new statute And she looked at that and said No I don't believe that's appropriate Given the circumstances And she deviated And again, even under the new statute The court still must first determine If maintenance is even appropriate And that is what she did And again The goal is not just to meet One's minimum needs It's to look at the standard of living That's similar during the marriage And we cite to N. Ray Marriage of Gunn And N. Ray Marriage of April in this matter And again Mr. Clems argued That she needed roughly $4,000 To pay for the tuition For John A. Logan to finish her degree She has books She has other school expenses She has her monthly expenses And living Those are all factors that the court has to consider In determining maintenance awards The third issue that Mr. Riker raised was Excuse me The motion for substitution of judge Substantial issue is one that is directly  Child support is certainly A substantial issue in a divorce case Your honors I will admit I was not present during the pre-trial Conference that was held with Judge Dolan Typically as Mr. Clemens described She will pull the attorneys into her chamber And say okay what's going on today What are we arguing about The attorneys will say you know Here's our position judge Here's my position judge And then she'll typically give the attorneys feedback Well you know here's what I'd be inclined to do Here's some of my thoughts Here's what I think the law says And then after those discussions Are held it's go back Talk to your clients see if you can get something Worked out That is typically what happens With Judge Dolan at her pre-trial conference Understand we don't have Records of what went on in Chambers that day and unfortunately That does hinder us But the order that was drafted Specifically stated That After Pre-trying the issue With the court The parties reached an agreement on child support And I believe That because of this Pre-trial issue And pre-trying the issue with Judge Dolan I believe that that was a Substantial decision and I believe that she Was correct in denying the motion for Substitution of judge Is there a 5th district Case that if a judge Assigns an agreed temporary order That's a substantial ruling in the case I did not your honor Although there is case law Out there where it talks about that the Courts have an independent duty To ensure that Arrangements made by divorcing Parents that directly affect their children Such as those related to Custody and support Are to be in the best interest of the children And the courts are to review And decide if those Order Arrangements are appropriate And I believe that gets back to the court Questions to Mr. Clemons And that she Did have discretion If she did not believe that order was Appropriate she could have denied it And so I Believe that her Going ahead and Pre-trying the issue With the court With the attorneys And then the attorneys Going back and making the agreements Through the client I believe that is A substantial ruling Even if not This case was pending for Over two years your honor We had multiple case management Conferences in front of the trial court And at those case management Document case management Conferences you know many Times it is just you know judge We're trying to finish up discovery we need Another 60 days Documents are in German Trying to get translations A lot of things are mundane Nothing really for The trial court to make rulings on But at other times We are discussing you know Judge we're not getting Along on what temporary child Support should be you know we think it Should be this they think it should be That we're not Agreeing on whether or not we should do Maintenance you do Get into the issues of the Case and whenever you're dealing with Divorces property Division maintenance Debt division those are all substantial Issues and the judge Does get feedback at those case management Conferences and so after Two and a half years I believe It's a little late and The court Properly denied the motion for Substitution because again It's not a situation where the party Should be allowed to go in and judge shop And after so long Just before you run out of time Why do you think the duration is Appropriate the duration of the maintenance Is appropriate the duration Again Are not against the manifest way The evidence okay Again with the new maintenance Statute we have the legislature Telling us that this Is an appropriate consideration Now we Were asking for roughly 48 months And Again this was a long term Marriage they were married for 14 Years yes I know Mr. Riker argued that They were separated for five years but whenever You look at the maintenance statute is Specifically states you are to consider The length of the marriage not the length Of the time that they were separated And so I believe given the length of The marriage given the disparity in Income in this situation I believe the duration is appropriate as Well We Have any other questions thank you counsel Thank you your honors for those reasons We ask to affirm the trial course decisions Thank you Mr. Clemens rebuttal Yes Thank you Your honors First judge I think the judges the Evidence will show that My client is making $75,000 His testimony was that he Would not be up to 80,000 As counsel indicates SIU salary structure unfortunately Is flat these days No one is getting Raises or increases And At the time Of the November 2014 Second stage hearing There was I believe $3,800 or so Still owed on the mortgage To a local bank In addition still owed Was the sum of $79,000 To professor Reichardt's Parents and sister And documents were introduced Somewhere in actually in German And there were Translations that Indicated that they fully expected To be paid and There were some time periods in there Although They weren't going to hold him I think to a Strict time period He had to pay the interest If the court Looks at his financial Statement that was updated For the trial He was in the hole Every month before The court's ruling On maintenance And child support Yes the court Went through the various Provisions of maintenance The different factors The so called factors But it's our position that The court misinterpreted These factors and did not Apply the evidence From the case properly To these factors Which mandates A reversal About the only factor we agreed on was The court found that This was a very frugal Couple and that there Was no real problem with The wife meeting her Standard of living because her standard of Living during the marriage was frugal And the husband had Continued that during the separation So not an Extravagant couple and really not A couple with Considerable means What clearly Happened in this case was The court Focused in I think honed in On a new set of laws That no one Involved in the case Had any idea Would be considered at trial Nothing was addressed in the post-trial Pleadings The written closing Arguments And although the trial Court may have cut down The formulas for the amount of Maintenance the trial Court clearly did not cut down The duration 8.4 Years is 100 months Of maintenance When we have a trial Proceeding where the litigant Is on the witness stand Saying give me Three to three and a half Years to get This new degree Which is 36 to 40 months Her attorneys In their closing say Well give us 48 months Which was contrary To their own client's testimony And then the judge Issues an order For 100 months Of maintenance I think when you review The evidence in this case As I said very fact Specific case we have here This is clearly An abuse of discretion As well as against the manifest Weight of all the evidence That was introduced before the court For those reasons Your honors we respectfully request That the court reverse The trial court's decision Thank you counsel we'll take this case Under advisement we're going to take a short Recess before we take up The 10 o'clock cases